The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Mary Ann Whipple
United States Bankruptcy Judge

Dated: March 14 2012

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-30467 |
| | ) | |
| James Timothy Weilnau and | ) | Chapter 13 |
| Nancy Ann Weilnau, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

## MEMORANDUM OF DECISION AND ORDER
## DENYING CONFIRMATION OF AMENDED CHAPTER 13 PLAN

This case came before the court for hearing on confirmation of Debtors' proposed Chapter 13 Plan [Doc. # 2]. Debtors, their attorney, and the Chapter 13 Trustee appeared in person. At the hearing, the Chapter 13 Trustee orally objected to confirmation, arguing that the proposed plan does not meet the best interest of creditors test of 11 U.S.C. § 1325(a)(4). For the reasons that follow, the court agrees. The court will, therefore, sustain the Trustee's objection and deny confirmation of Debtors' proposed plan.

## BACKGROUND

Debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on February 3, 2011. Their bankruptcy schedules show assets that include a membership interest in the Weilnau Land Company LLC ("the LLC"), an Ohio limited liability company, consisting of seventy-eight shares or membership units owned by James Weilnau. [Doc. # 1, Schedule B, p. 12/62]. The LLC owns a 140-acre farm. Other members of the LLC consist of his brothers and sister. Although Weilnau originally owned

100 membership units in the LLC, he testified that several years ago he sold twenty-two units to his brother for approximately $900 per unit. No appraisal of his membership interest was done at the time of the sale and no other transfers by any member have occurred in the past four years. On Schedule B, Debtors value Weilnau's membership units at $840 per share. [*Id.*].

The Operating Agreement of the LLC, as amended in 2008, addresses the transfer or sale of membership units. It provides in relevant part as follows:

> [N]o member may transfer, sell, pledge, or assign the Economic Interest of his Membership unit(s) to any third party, without compliance with the provisions of this Agreement. The transfer, pledge, gift, or Assignment by anyone . . . of the Economic Interest does not include the right to participate in the management of the affairs of the company. . . . [T]he Economic Interest Owner may be granted all of the rights and privileges of Membership only by an affirmative vote of the Members holding a majority of the units of the company.

[Debtors' Ex. B, ¶ 6.2]. The Operating Agreement also provides that "[a]ll items of income, gain, loss, deduction and/or credit of the Company for each Fiscal Year shall be allocated to the Members in proportion to their respective Percentage Interests unless otherwise provided herein or by subsequent agreement of the Members." [Debtors' Ex. A, ¶ 3.1].

Weilnau testified that his 2009 federal income tax return shows $7,200 of farm income and that approximately the same farm income was included on his 2010 return. However, he testified, without further explanation, that he did not actually receive payments totaling $7,200. According to Weilnau, he receives only $182 per month, or $2,184 per year, as land rental income.

Debtors' Schedule I shows average monthly income after payroll deductions of $5,150.06, which amount includes $182 income received from the LLC. [Doc. # 1, Schedule I, p. 32/62]. Weilnau's payroll deductions include a total of $870.18 as 401(k) loan plan payments. [*Id.*, p. 33/62]. Their secured debt shown on Schedule D includes only the mortgage debt on their home and a debt secured by a 2009 Chevrolet Cobalt.

Debtors filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income on Official Form B22C, also known as the means test. [Doc. # 1, pp. 54-62]. Part I of Form B22C reflects a debtor's average income during the six calendar months before filing the bankruptcy petition. Debtors report total monthly income of $7,065.00, which includes gross wages only. They do not include income received from the LLC. Because their income is above the applicable median income for a household the size of Debtors' in Ohio, as set forth in Part II, they were also required to complete Part III of the form, which includes a calculation of deductions from income that are

2

allowed under 11 U.S.C. § 707(b)(2).

Debtors deduct from their income on Form B22C total expenses in the amount of $6,582.38, resulting in monthly disposable income shown on line 59 of $482.62. Their deductions include, among other things, a vehicle ownership/lease expense deduction on line 28 in the amount of $218.00 ($496 IRS Local Standard less secured debt payment of $278.00), and an ownership/lease expense deduction on line 29 for a second vehicle in the amount of 496.00 ($496 IRS Local Standard less secured debt payment of $0). Debtors did not include Weilnau's 401(k) plan loan repayments as qualified retirement deductions on line 55.

Debtors propose a sixty-month plan under which they will pay the Chapter 13 Trustee $351.00 per month, for total plan payments of $21,060. Unsecured creditors have filed proofs of claim that total $58,109.64.

## LAW AND ANALYSIS

The Trustee objects to Debtors' pending proposed Chapter 13 plan, arguing that it fails to meet the best interest of creditors test set forth in 11 U.S.C. § 1325(a)(4). While the objecting party has the initial burden to produce evidence in support of an objection, "[d]ebtors have the ultimate burden of proof to show the requirements of 11 U.S.C. § 1325 have been met." *In re Lofty*, 437 B.R. 578, 584 (Bankr. S.D. Ohio 2010); *In re McCarthy*, 376 B.R. 819, 821 (Bankr. N.D. Ohio 2007); *see also Harbin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir.1990); *Ed Scar & Sons, Inc. v. Francis (In re Francis)*, 273 B.R. 87, 91 (B.A.P. 6th Cir. 2002).

Section 1325(a)(4) provides that in order for a plan to be confirmed, the plan must provide creditors with at least as much value as the creditors would have received in a Chapter 7 liquidation. The Trustee asserts that the value of Debtors' assets exceeds the $21,060.00 proposed to be distributed under their Chapter 13 plan. Specifically, the Trustee asserts that a Chapter 7 trustee could sell Weilnau's 78 LLC membership units, which are valued on Debtors' Schedule B at $840 each, for a total value of $65,520. Thus, according to the Trustee, because Debtors' proposed plan payments total only $21,060 and will result in unsecured creditors being paid less than 100% of their claims, their unsecured creditors will receive less than what would be paid to them if Debtors' assets were liquidated in Chapter 7 and distributions made to unsecured creditors.

Debtors, on the other hand, point to provisions of the LLC's Operating Agreement that impose restrictions relating to the sale or assignment of membership units to third parties. The Operating

3

Agreement restricts sales to the sale of the economic interest in the units only and, absent approval by the other LLC's members, does not permit the buyer the rights and privileges of membership in the LLC, which includes the right to participate in the management of the affairs of the LLC. Thus, according to Debtors, these restrictions devalue the membership units to third parties and lower their liquidation value.

The Trustee counters that the restrictions in the Operating Agreement are unenforceable under Ohio law, citing *Elm Road Development Co. v. Buckeye Retirement Co., LLC (In re Hake)*, 419 B.R. 328 (6th Cir. 2009), in support. That case, however, is factually distinguishable. In *Elm Road Development Co.*, the shareholders had agreed at the time of incorporation to a restriction requiring the consent of the other shareholders prior to any effective transfer of the corporation's stock. The court noted that Ohio law generally disfavors restraints on alienation and requires that they be reasonable and construed in a manner that "favors free alienability and the right to convey." *Id.* at 333. Because the restriction in that case gave shareholders the absolute power to veto a transfer of stock, the court concluded that the Ohio Supreme Court would find the stock transfer restriction to be an unenforceable restraint on alienation. *Id.* at 334.

In this case, the transfer restriction is only a restriction on a buyer's right to become a "member" of the LLC. It does not restrict transfer of a "membership interest," referred to in the Operating Agreement as the member's "Economic interest of his Membership unit(s)." [Debtors' Ex. B, § 6.2]. The terms are distinguishable. *Holdeman v. Epperson*, 111 Ohio St. 3d 551, 555 (2006). Under the Ohio Limited Liability Company Act, Ohio Revised Code Chapter 1705, "member" is defined as a "person whose name appears on the records of the limited liability company as the owner of a membership interest in that company." Ohio Rev. Code § 1705.01(G). A "membership interest" is defined as "a member's share of the profits and losses of a limited liability company and the right to receive distributions from that company." Ohio Rev. Code § 1705.01(H). The Act specifically provides:

> An assignment of a membership interest does not dissolve the company or entitle the assignee to become or to exercise any rights of a member. An assignment entitles the assignee to receive, to the extent assigned, the distributions of cash and other property and the allocations of profits, losses, income, gains, deductions, credits, or similar items to which the assignee's assignor would have been entitled.

Ohio Rev. Code § 1705.18. It further provides that an assignee of a membership interest may become a member if assignor gives the assignee that right and either of the following occurs: "(1) The assignor has been given the authority in writing in the operating agreement to give an assignee the right to become a member" or " (2) [a]ll other members consent." Ohio Rev. Code § 1705.20(A). Thus, the Operating

4

Agreement's restriction requiring the consent of other members of the LLC in order for an assignee to become a member is expressly provided for under Ohio law and does not constitute an unenforceable restraint on alienation.

Nevertheless, even assuming that such a restriction would lower the value of Weilnau's membership units if sold to a third party, Debtors presented no evidence of such lower value. The only evidence of value consists of Debtors' own valuation on Schedule B of $840 per unit, for a total of $65,520.00. Consequently, the court cannot find that Debtors' proposed plan satisfies the best interest of creditors test. Debtors having failed to show that this requirement has been met, confirmation must be denied.

Moreover, it does not appear that Debtors' proposed plan satisfies the projected disposable income test under § 1325(b)(1)(B), which requires all projected disposable income to be received during the applicable commitment period to be applied to make payments to unsecured creditors under the plan. "Disposable income" is defined with respect to above-median income debtors, such as Debtors in this case, in § 1325(b)(2) and (3). Those sections provide that "disposable income" means current monthly income ("CMI"), as defined in § 101(10A) and limited in § 1325(b)(2), less amounts reasonably necessary to be expended for the maintenance and support of debtor and debtor's dependents as determined in accordance with the means test set forth in 11 U.S.C. § 707(b)(2)(A) and (B). Official Form B22C facilitates this calculation, *Hamilton v. Lanning*, – U.S.--, 130 S. Ct. 2464, 2470 n.2 (2010), thus yielding monthly disposable income as defined in § 1325(b)(2) and (3), which is presumptively a debtor's projected monthly disposable income, *Id.*, at 2478. Debtors' Form B22C, on its face, shows monthly disposable income at line 59 of $482.62, yet they propose to make monthly plan payments of only $351.00.

In addition, it does not appear that Debtors' have filed an accurate Form B22C. Debtors' CMI includes only wages. It does not include any income received by Weilnau from the LLC, notwithstanding Weilnau's testimony that he did receive such income. Also, they deduct from CMI the IRS Local Standard for an ownership/lease expense for a second vehicle; however, they report no lease or secured debt payment relating to that vehicle. The United States Supreme Court has made clear that the Local Standard for vehicle ownership expenses "encompasses the costs of a car loan or lease and nothing more." *Ransom v. FIA Card Services, N.A.*, –U.S.–, 131 S. Ct. 716, 725 (2011). Thus, under *Ransom*, Debtors' are not entitled to the deduction to the extent that they own the vehicle free and clear of any lien. And finally, Debtors' Schedule I shows that a total of $870.18 is being withheld from Weilnau's pay for payment of 401(k) plan loans but no deduction for such is taken on line 55 of Form B22C.

For all of the foregoing reasons, the court finds that Debtors' have failed to meet their burden of showing that the requirements of § 1325 have been met. *See Lanning*, 130 S. Ct. at 2469 ("Section 1325 specifies circumstances under which a bankruptcy court 'shall' and 'may not' confirm a plan.").

**THEREFORE,** good cause appearing,

**IT IS ORDERED** that confirmation of Debtor's Chapter 13 Plan [Doc. # 2] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Debtors are granted leave to and must file a proposed amended Chapter 13 plan and an amended Official Form B22C, if any, on or before **April 9, 2012;** and

**IT IS FINALLY ORDERED** that a further confirmation hearing will be held on **May 8, 2012**, **at 2:00 o'clock p.m.**